| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X | **Hearing Date and Time:**<br>June 30, 2011 at 10:00 a.m. |
| In re:<br><br>**THE LENOX CONDOMINIUM LLC,**<br><br>                            Debtor.<br>------------------------------------------------------------X | Chapter 11<br><br>Case No. 10-11391 (ALG) |

**MOTION PURSUANT TO BANKRUPTCY RULE 9019(a) SEEKING
ENTRY OF A STIPULATION APPROVING SETTLEMENT BETWEEN
DEBTOR AND CAPITAL ONE, NATIONAL ASSOCIATION,
DISMISSING CHAPTER 11 CASE AND GRANTING RELATED RELIEF**

TO THE HONORABLE ALLAN l. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

      **The Lenox Condominium, LLC,** the debtor and the debtor in possession herein (the "Debtor") by its attorneys, **Robinson Brog Leinwand Greene Genovese & Gluck P.C.**, seeks, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), entry of a Stipulation (the "Stipulation"), the form of which is annexed hereto as Exhibit A, between the Debtor and **Capital One National Association** ("Capital One"), which resolves the dispute between and among the Debtor and Capital One, allows for the orderly sale of the Debtor's property, and accordingly, seeks the dismissal of the Debtor's Chapter 11 case pursuant to 11 U.S.C. §305(a)(1), 1112(b) and/or 105(a) (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

{00533485.DOC;2 }533485-2

## Jurisdiction and Venue

1.  The court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

## Background

2.  On March 17, 2010, (the "Petition Date") the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") and has remained in possession of its property and the management of its business as a debtor in possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

3.  No creditors' committee was appointed in this case.

4.  The Debtor is a New York limited liability company. **Uptown** is the 100% owner of the membership interest in the Debtor, and **Lewis Futterman** is the President of the Debtor. Debtor's principal assets are located at **380 Lenox Avenue, New York, New York.**

5.  The Debtor is a real estate development company and is the owner of eighteen (18) condominium units (the "Property") located at 380 Lenox Avenue, New York, New York. The Debtor had built the condominium project and then began selling the apartments. The Property represents the last eighteen (18) apartment units that need to be sold, but due to the economy, the Debtor had not been able to sell them by the date of the filing of this case. Meanwhile, the Debtor leased certain of the apartments to third parties, and derives some of its income from the rents collected therefrom.

6. Due to the change in the economy and other factors, Debtor was unable to sell its remaining units, and after negotiating a Forbearance Agreement with Capital One, was forced to file this case when no further extensions could be worked out. In order to rehabilitate the Debtor's business, the petition was filed on the Petition Date.

7. As more fully detailed in the Stipulation, the Debtor herein had originally entered into a Non-Revolving Line of Credit Note with North Fork Bank in the sum of $19,650,000 on July 25, 2007, as well as a Mortgage, Security Agreement and Assignment of Leases and Rents ("Loan Documents"). Additional documents and agreements were entered into as set forth in the Stipulation. The documents were duly recorded and perfected by the filing of a UCC-1 Financing Statement. Capital One's liens constitute duly perfected first priority security interests in the property of the Debtor.

8. The Debtor had sought bankruptcy protection in an effort to *stay* any action by Capital One to release from escrow the deeds to the Debtor's Property that they held and to preserve the value of the Property. Debtor needed time for the real estate market to be revived, and to stabilize its business in the hopes of coming to a reasonable accommodation with Capital One on moving forward.

9. The dispute between the Debtor and Capital One thereafter centered on valuation and timing. While the Debtor sought bankruptcy protection in order to preserve its Property and reorganize, Capital One deemed the bankruptcy case as an abuse of the Chapter 11 process.

10. Capital One took an immediate and active role in the Debtor's bankruptcy case. Capital One's counsel contacted Debtor's counsel to discuss same, and used that time to work out the terms of a consensual cash collateral stipulation the "Cash Collateral Stipulation"). The Cash Collateral Stipulation included, amongst other things, permission for the Debtor to use cash collateral in accordance with a specific budget, provided for turnover of excess cash and also provided for Capital One to take a Rule 2004 Examination of the Debtor under oath.

11. Thereafter, on or about August, 2010, Capital One made a motion to dismiss the Debtor's Chapter 11 case or to convert this Chapter 11 case to a Chapter 7 case ("Dismissal Motion"). Debtor opposed the Dismissal Motion and requested time to file a plan of reorganization, based upon its belief that it could sell its Property and satisfy the claims of its creditors over a two (2) year period of time, which the Court felt appropriate under the circumstances. The parties also, at the Court's urging, entered into a second Cash Collateral Stipulation.

12. Prior to the expiration of the time period set by the Court for the Debtor to file its plan, Capital One filed, on November 22, 2010, its motion for relief from the automatic stay ("Stay Motion"). The Debtor thereafter filed its plan of reorganization (the "Plan"), and its disclosure statement for its Plan (the "Disclosure Statement") on November 24, 2010, and its opposition to the Stay Motion on December 1, 2010. At the hearing on the Stay Motion, the Court found that since the issues underlying plan confirmation and the Stay Motion should be dealt with at one

trial on all of the issues involved, that it made sense to adjourn and carry the Stay Motion to confirmation of the Debtor's Plan.

13. The Debtor thereafter filed its motion seeking approval of its Disclosure Statement, which Capital One also opposed. At the hearing on same, the Court conceptually approved the Disclosure Statement, subject to further additional modifications, and once again urged the parties to work toward a consensual resolution. Taking this to heart, starting in January of this year, the parties have been meeting, exchanging proposals and working with each other to see if a compromise could be reached that would provide for the global resolution of all matters and disputes between them.

14. After extensive negotiations, the framework of a settlement was proposed and agreed to, subject to the memorialization of said agreement in a stipulation. Additional meetings were held to fine-tune the agreement, which went through numerous permentations before it was finalized. The results are as set forth in the Stipulation which the parties are asking this Court to approve in conjunction with the dismissal of this Chapter 11 case.

## The Proposed Compromise and Settlement

15. Set forth herein are the highlights of the proposed compromise and settlement, the specific terms of which are contained in the Stipulation, and are incorporated herein by reference. As a result of the global settlement negotiations, the Debtor and Capital One, among others, have agreed that the amount of Capital One's secured loan shall be fixed at $10,700,000 plus interest thereon, a time

schedule for Debtor to sell its Property, subject to certain minimum sale/release prices over two (2) years, as well as other related relief. This proposal also includes monies to be earmarked for the Debtor to use to fund its operations and repay its creditors in the normal course of its business. Finally, the agreement between the parties that this Court is being asked to approve, requires that this bankruptcy case be dismissed in order to become effective.

16. Moreover, the Debtor's estate may be administratively insolvent. Thus, the Debtor believes that further expenditure of resources in an attempt to confirm a Chapter 11 plan may be futile, and simply serve to dissipate the Debtor's funds. As will be detailed more fully herein, absent approval of this settlement, the Debtor will be embroiled in complex and lengthy litigation, which might not ultimately benefit the estate. In addition, given the extent of administrative claims of Debtor's professionals, the liens of Capital One, and absent the settlement, there are no free assets available in this case to justify conversion. Accordingly, Debtor is seeking approval of the Stipulation and the dismissal of this case as it is in the best interests of the Debtor, its creditors and the estate under the circumstances.

17. Subject to the requirement of notice and hearing, the Bankruptcy Court "may approve or compromise" claims/disputes. Fed. R. Bankruptcy R. 9019(a). Rule 9019(a) of the Bankruptcy Rules specifically provides that, "On a motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement. The legal standard for determining the propriety of

a bankruptcy settlement is whether the settlement is in the "best interests of the estate." In re Adelphia Communications Corp., 327 B.R. 143 (Bkrtcy. S.D.N.Y. 2005) (citing In re Purofied Down Prods. Corp., 150 B.R. 519, 523 (S.D.N.Y. 1993) (Leisure, J.)("Purofied Down Products")).

18. The Supreme Court has set the standard for bankruptcy judges to follow in determining whether to approve compromises. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968); see 10 Collier on Bankruptcy ¶9019.02[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (circuit courts have adopted a uniform standard for governing the approval of compromises based on TMT Trailer). In considering whether to approve a settlement, a bankruptcy judge should:

> apprise [itself] of all facts necessary for an intelligent and objective option of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. TMT Trailer, 390 U.S. at 424-425.

19. Approval of a proposed settlement is within the sound discretion of the bankruptcy court, *See*, In re Remsen Partners, Ltd., 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2002) (citing Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.), 762 F.2d 185, 189 (2d Cir. 1985)). This however, does not require a trial, or mini-trial on the merits, but rather, in reviewing the proposed settlement, "[t]he Court's responsibility is to 'canvass the issues and see whether the settlement falls

below the lowest point in the range of reasonableness.'" In re Drexel Burnham Lambert Group, Inc. 143 B.R. 493 (Bkrtcy S.D.N.Y. 1991) See also, In re Remsen Partners, Ltd., 294 B.R. at 565 (citing In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993)).

20. In evaluating a proposed settlement Courts look to several factors including: (1) the probability of success in the litigation, (2) the difficulties, if any, to be encountered in the matter of collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interest of creditors and a proper deference to their reasonable views. Id. Other potentially relevant factors include (5) the competency and experience of the trustee and trustee's counsel, (6) the nature and breadth of releases to be issued as a result of the settlement, (7) the extent to which the settlement is not the product of fraud or collusion, and (8) whether the proposed settlement is supported by an adequate record. Id.

21. The Debtor submits that the proposed settlement is fair and equitable in light of these factors. The proposed settlement will prevent the Debtor from potentially losing its Property, and will result in the orderly sale of its Property, which should also result in the Debtor receiving sufficient funds to make payments to its creditors. The orderly sale program will also maximize the value of the individual apartment units by not having them sold at "fire sale prices", which will inure to the benefit of the Debtor's estate, Capital One, the Creditors and the other home owners that own apartments at the building by maintaining property values.

It is the further goal that the proposed settlement will relieve the parties of continuing their history of constant and costly litigation, and will avoid any further motion practice, discovery and hearings with respect to this proceeding. The proposed settlement will result in direct and material benefits to the Debtor's estate.

22. This case has been rife with litigation thus far and the history between these parties suggests few, if any, matters pending before this Court will go uncontested. Continued litigation will be timely and costly and there is no assurance of success. The proposed settlement is a fair and reasonable resolution of the many controversies between the parties without the additional litigation costs and will save the estate significant administrative costs. Absent approval of the proposed compromise, the Debtor believes that it will become embroiled in protracted and costly litigation on valuation and feasibility.

23. The Debtor believes the result that could be achieved from continued litigation would not be any more favorable than the settlement provided for in the proposed Stipulation. In fact, such litigation could result in the Debtor losing its Property, resulting in the Debtor's inability to rehabilitate its business, and creditors receiving no payment on account of their claims. Accordingly, in the Debtor's considered judgment, the costs and uncertainty of the litigation greatly outweigh the possible benefit to the estate of continuing the extant litigation with Capital One. The Debtor submits that the difficulties and uncertainties of the litigation weigh in favor of this Court's approval of the proposed settlement.

24. It is therefore respectfully submitted that the terms of the settlement are fair and equitable and provide for a reasonable result for the estate without the unnecessary costs and uncertainty of litigation. It is respectfully requested that the Court authorize the proposed settlement and approve the Stipulation. In view of the aforementioned facts, the Debtor believes that the settlement as set forth herein, is in the best interest of the estate and of the Debtor's creditors, and an appropriate exercise of the Debtor's business judgment.

25. Finally, the settlement with Capital One requires that in order for it to be effective, the Debtor must dismiss its Chapter 11 case. Accordingly, Debtor is seeking this Court's authorization to dismiss this chapter 11 case as such a dismissal is in the best interests of the Debtor's creditors under these circumstances.

26. The Bankruptcy Code at section 305 provides in pertinent part:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if –
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension...

11 U.S.C. §305(a)(1).

27. While section 1112(b) of the Bankruptcy Code sets forth a non-exhaustive list of reasons constituting case for a dismissal or conversion of a case, "[S]ection 305 is reserved for those rare occasions when both the creditors generally and the debtor itself are better served by dismissal or suspension." 2 Collier on Bankruptcy ¶ 305.01[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

28. Courts have interpreted section 305(a) by examining the legislative history:

> [I]f an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. The less expensive out of court workout may better serve the interest in the case.

29. In re Grigoli, 151 B.R. 314, 319 (Bankr. E.D.N.Y. 1993) citing H.R. 95-595, 95th Cong. 1st Sess. 325 (1977). S.R. No. 95-989, 95th Cong.2d Sess. 36 (12978), U.S. Code Cong. & Admin.News pp. 5787, 6281, 5822 (1978). See In re Pine Lake Village Apartment Co., 16 B.R. 750, 753, (Bankr. S.D.N.Y. 1982); In re Artists' Outlet, Inc., 25 B.R. 231, 232 (Bankr. D. Mass. 1982).

30. Some courts interpret the legislative history of section 305(a) to be a limiting legislative directive and have authorized abstention only when: (1) the petition was filed by a few recalcitrant creditors and most creditors oppose the bankruptcy; (2) there is a state insolvency proceeding or an out-of-court arrangement pending; and (3) dismissal is in the best interest of the debtor and all creditors. In re 801 South Wells Street Ltd., Partnership, 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996).

31. Other courts, however, have established criteria for determining whether the abstention would "better serve" the interests of the debtor and the creditors. These factors include: (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to

reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought. (See 801 South Wells, supra, 192 B.R. at 723, citing In re Fax Station, Inc., 118 B.R. 176, 177 (Bankr. D.R.I 1990), In re Artists' Outlet, Inc., 25 B.R. at 233 (citing cases); In re Win-Sum Sports, Inc., 14 B.R. 389, 398 (Bankr. D.Conn. 1981)).

32.  In determining whether a case should be dismissed pursuant to section 305(a), courts in this district have said that "[t]he final test to be considered is whether dismissal is in the best interest of the debtor and all the creditors." In re Grigoli, supra. 151 B.R. at 321.  To make that determination, the Court must look to the facts of the individual case.  In re Trina Associates, 128 B.R. 858, 867 (Bankr. E.D.N.Y. 1991) citing In re Fitzgerald Group, 38 B.R. 16, 17 (Bankr. S.D.N.Y. 1983); In re Artists' Outlet, Inc., 25 B.R. 231 (Bankr. D. Mass. 1982).

33.  While many dismissals pursuant to section 305(a) involve involuntary cases, "[D]ismissal or suspension of a case may be appropriate when the case constitutes a two-party dispute between the debtor and a single creditor." Collier's supra., at paragraph 305.02[2][d].

34.  In the case at bar, the operative facts demonstrate that the Debtor has

globally resolved its issues with its most significant creditor, which will result in the Debtor being able to sell its Property in an orderly manner, which should then provide it with sufficient monies to pay its creditors, which payments the Debtor intends to and shall make; thus, the Debtor submits that it no longer requires the protection or jurisdiction of the Bankruptcy Court.

35. At this juncture, the Debtor submits that a dismissal pursuant to section 305 of the Bankruptcy Code is appropriate based upon the economy of administration and the lack of a continuing bankruptcy purpose for the case. Moreover, the Court may dismiss this Chapter 11 case pursuant to Section 1112(b) of the Bankruptcy Code for cause on the basis that the Debtor has resolved its dispute with Capital One, which will result in providing Debtor with the time period to orderly sell its Property, and thus the ability to pay its creditors, and thereby no longer requires the protections afforded in the bankruptcy forum. All of the foregoing provides this Court with ample grounds to conclude that dismissal of this chapter 11 case is in the best interests of all creditors and the Debtor and should be granted.

36. As authorized by this Court, the Debtor has served a copy of the Notice of Motion and this Motion with all exhibits by regular mail upon: (i) the Office of the United States Trustee, Attn: Susan Golden, Esq.; (ii) all creditors listed in the Debtor's schedules filed pursuant to Bankruptcy Rule 1007 or that have filed claims with the Court; (iii) Lazer, Aptheker, Rosella & Yedid, P.C., Attn: Joseph Savino, Esq., counsel for Capital One; and (iv) all parties who filed notices of appearance.

37. No prior motion for the relief sought herein has been made to this or any

other court.

      **WHEREFORE**, the Debtor respectfully requests that the Court (i) approve the Stipulation which would authorize the settlement and compromise of the disputes between the Debtor and Capital One on the terms set forth therein, (ii) dismiss the Debtor's chapter 11 case along with such other and further relief as is just and proper.

**Dated:** New York, New York
        June 8, 2011

        **ROBINSON BROG LEINWAND GREENE**
         **GENOVESE & GLUCK P.C.**
        **Attorneys for the Debtor**
        875 Third Avenue, 9th Floor
        New York, New York 10022
        Tel. No.: (212) 603-6300

        By:/S/Robert M. Sasloff_____
          **Robert M. Sasloff**