Lazer, Aptheker, Rosella & Yedid, P.C.
Attorneys for Capital One, N.A.
225 Old Country Rd., Melville, NY 11747
Joseph C. Savino (JS 8884)
(631) 761-0855

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In Re:                                                    Chapter 11

THE LENOX CONDOMINIUM, LLC,                               Case No.: 10-11391-alg
                                                          <u>STIPULATION</u>
                                        Debtor.

-----------------------------------------------------------------X

THIS AGREEMENT, dated as of June 30, 2011 ("Agreement") by and among CAPITAL ONE, NATIONAL ASSOCIATION ("Capital One"), successor by merger to NORTH FORK BANK ("Capital One"), THE LENOX CONDOMINIUM LLC ("the Debtor"), UPTOWN PARTNERS, LLC the Debtor's sole member ("Uptown") and the guarantors of the Debtor, Lewis Futterman ("Futterman") and Starla Caldwell ("Caldwell")(Debtor, Uptown, Futterman and Caldwell are hereinafter collectively referred to as the "Borrowers");

WHEREAS the Debtor is presently indebted to Capital One in the approximate sum of $14,000,000.00 under a line of credit loan ("Loan") originally entered into by Uptown on or about July 25, 2007 evidenced by a non-revolving line of credit note from Uptown in favor of Capital One ("Note");

WHEREAS the Loan was secured by a Mortgage, Security Agreement and Assignment of Leases and Rents ("Original Mortgage") executed by Debtor, dated July 25, 2007, recorded against two commercial condominium units and twenty-five residential condominium units (seven of which units have been sold and released from the lien of the Original Mortgage) at the premises located at 380 Lenox Avenue, New York ("Premises");

WHEREAS, on or about March 4, 2008 and May 8, 2008 by Splitter and Modification Agreements made between the Debtor, Uptown and Capital One's predecessor, the Mortgage was split into separate mortgage liens, the commercial units were released from the lien of the Original Mortgage and a substitute Mortgage ("Mortgage") was recorded to cover the remaining eighteen (18) residential condominium units ("Units");WHEREAS, the Loan matured by its terms on July 25, 2009 and the debt owed to Capital One under the Loan became due and owing. Despite the Borrower's failure to pay the sums due upon maturity of the Loan, at Borrowers' request, Capital One agreed to modify and amend, at the Borrowers' request, the Note and the Mortgage subject to and in accordance with the terms and conditions set forth in a Note and Mortgage Modification and Extension Agreement dated September 9, 2009 ("Modification Agreement"), whereby the maturity date of the Note and Mortgage was extended to July 25, 2010;

WHEREAS, in consideration for the extension of the maturity date, the Borrowers agreed , <u>inter alia</u>, to pay down the outstanding principle amount of the

2

Loan by $4,550,000.00 by November 30, 2009. Under the terms of the Modification Agreement, interest was charged on the outstanding sums borrowed at the variable rate based upon Capital One's Prime Rate, plus 1.5% per annum, and the Borrowers gave Capital One deeds in-lieu of foreclosure and consents to foreclosure, to be held in escrow pending a default by Borrower under the Modification Agreement;

WHEREAS, the Borrowers subsequently defaulted on the Modification Agreement by, <u>inter alia</u>, failing to reduce the outstanding principal amount of the loan by $4,550,000.00 and failing to make additional payments which were due on December 1, 2009;

WHEREAS, on or about January 6, 2010, Capital One sent default notices to the Borrowers. The Borrowers failed to cure the defaults within three (3) business days of the date of the default letters as required by the terms of the Modification Agreement. As such, all outstanding sums due, under the Modification Agreement for principal, interest, attorneys' fees and costs, became immediately due and payable without any additional action being required by Capital One;

WHEREAS, notwithstanding their defaults, Capital One once again continued to work with the Borrowers. Under a standstill agreement, Capital One did not file the deeds-in-lieu of foreclosure or commence an action and file the consents to foreclose which the Borrowers had executed and delivered to Capital

One and, instead and, without waiving any of its rights, Capital One agreed to temporarily forbear from taking either of these actions;

WHEREAS, shortly after the expiration of the period during which Capital One had agreed to forbear from exercising its rights under the Forbearance Agreement, the Debtor filed its Chapter 11 Petition;

WHEREAS, after the filing of the Debtor's petition, Capital One moved to dismiss or convert the Debtor's Chapter 11 case;

WHEREAS, the Debtor subsequently proposed its plan of reorganization;

WHEREAS, Capital One thereafter moved to lift the automatic stay;

WHEREAS, the Bankruptcy Court ordered that a determination to approve the plan or grant the motion to lift stay await the conclusion of a valuation hearing;

WHEREAS, the parties desire to settle this proceeding, without the need for further litigation, upon the terms and conditions hereinafter set forth;

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein and good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto are desirous of resolving the indebtedness owed as follows:

1. The Borrowers acknowledge and agree that, as of May 13, 2011, they owe Capital One the following sums on the Loan:

a) principal of $10,323,333.60;

b) interest of $3,535,183.10;

c) negative tax escrow of $85,699.23; and

4

d) late fees of $3,039.25. In addition, the Borrowers agree that, as of the date of this Agreement, they have no defenses, setoffs or counterclaims against Capital One.

2. The Borrowers also acknowledge that there is no cure period in this Agreement and that, except as modified by this Agreement, all other terms and conditions contained in the underlying Loan documents continue to be in full force and effect.

3. Despite being owed the amounts set forth in paragraph 1 hereof, Capital One agrees to accept the sum of $10,700,000.00 ("Modified Loan"), plus interest thereon as hereinafter set forth, in full satisfaction of the Loan, to be paid as set forth below:

a) $3,500,000 for the time period commencing with the Bankruptcy Court's Order dismissing the bankruptcy proceeding, but, in no event, commencing later than 7-15-11, and ending 12-31-11;

b) $2,500,000 for the period 1-1-2012 to 6-30-2012;

c) $3,500,000 for the period 7-1-2012 to 12-31-2013;

d) $1,200,000, for the period 1-1-2013 to 6-30-2013 plus all accrued interest at the rate set forth in paragraph 4 herein.

4. Interest shall accrue on the outstanding amount of the Modified Loan at the rate of Capital One's prime rate plus 1 ½% or the rate of 4 ¾%, whichever rate is higher.

5. Any and all real estate taxes or other taxes constituting an encumbrance on that portion of the Premises that is subject to the Mortgage, common charges, insurance or any other charges or expenses that, if not paid, would decrease the value of the Premises or jeopardize Capital One's lien, shall be immediatley paid by the Borrowers and the failure to immediately pay any such item shall constitute an event of default hereunder and Capital One shall be permitted to immediately exercise any and all of its rights, without notice to the Borrowers, including, but not limited to, those rights set forth in paragraph 19.

6. The payments to Capital One to be made pursuant to paragraph 3 are to be made upon the sale of each Unit by crediting the Net Proceeds (hereinafter defined) first to the Modified Loan amount, and then to interest accrued on the Modified Loan pursuant to paragraph 4 herein.

7. For purposes of this Agreement all sums to be paid to Capital One by the Borrowers for any and all purposes must be in United States funds and delivered by official bank check, cashier's check or wire transfer and the payment date periods set forth in paragraph 3 shall be considered time of the essence dates, except as specifically set forth herein in paragraph 14.

8. For purposes of this Agreement a "bona fide contract of sale" means a signed, written contract evidencing on arms length transaction, i.e., no sales to insiders, with a hard deposit of at least ten (10%) percent at Bank's sole discretion or such lesser deposit amount as may be required by a committed institutional end loan provider to be held in escrow until closing and subject to forfeiture for breach

by the purchaser and a firm time of the essence closing date.  The sole exception to no sale to insiders shall be a sale to Futterman and/or Caldwell for one unit at a price not less than the agreed Minimum Sales Price set forth in Schedule A.

9. Any and all deposits from bona fide contracts of sale of each Unit shall be maintained in an attorney escrow account at Capital One by Hartman & Craven LLP, attorneys for the Debtor under the offering plan to convert the Premises to condominium ownership.

10. Upon the date this Agreement is executed and "so ordered" by the Bankruptcy Court and the bankruptcy proceeding is dismissed ("Effective Date"), the Borrowers shall deliver to counsel for Capital One copies of any and all contracts entered into for the sale of a Unit that are fully executed as of that date, and copies of any such contract executed thereafter shall be delivered to counsel for Capital One within three (3) business days of the execution of the contract by Borrower.

11. As the Borrower closes each sale of a Unit, the contract sales price, less payment of any outstanding real estate taxes for the Unit and expenses of the sale for legal fees, title charges, customary seller closing costs and real estate brokerage commissions, such commission not to exceed six (6) percent of the contract sales price, shall be immediately delivered to Capital One ("Net Proceeds"), and, upon receipt by Capital One, six (6) percent of the Net Proceeds shall be paid to Debtor, or as designated by Debtor, and the balance of the Net Proceeds shall be applied as set forth in paragraph 6 herein.  In no event shall

Capital One receive less than 88% of gross sale proceeds from any Unit sale. At each Unit sale closing, upon receipt of the Net Proceeds, Capital One shall deliver to the purchaser or the purchaser's title company a release of lien and a termination of the assignment of leases and rents, both in recordable form, of its mortgage and assignment of leases and rents encumbering the particular Unit, and shall deliver to Debtor the original deed in lieu of foreclosure that is being held in escrow for the particular Unit, pursuant to the terms set forth herein.

12. Borrowers shall be obligated to maintain the Premises at all times in good and substantial order and repair, and in such fashion that the value and utility of the Premises will not be diminished, including keeping the Premises free from any health, housing, building or other code violations.

13. Annexed hereto as Schedule A is a schedule of the "Minimum Sales Price" approved by the parties for the sale of each respective Unit. In the event a bona fide contract of sale contains a sales price of a Unit that is less than the "Minimum Sales Price" set forth on Schedule A, it shall be in Capital One's sole discretion as to whether to consent to the sale of that particular Unit at that sales price, and which consent must be in writing. The Debtor may offer discounts and/or buyer's concessions, provided that the gross sales price of any unit is not less than the minimum sale price set forth in Schedule A and, at closing, Capital One, N.A. receives not less than 88% of the actual sales price.

14. In the event the Debtor achieves sixty five (65%) percent of the required payment during a specific time period set forth in paragraph 3, the Debtor will be

entitled to a sixty (60) day cure period to close sufficient additional sales contracts to pay the balance due for that period, provided that, as of the last day of the relevant time period there are fully executed bona fide contracts of sale from which sufficient funds will be realized to pay the balance due for that time period with deposits of not less than ten (10%) percent, or such lesser amount as may be required by the institutional end loan provider consistent with paragraph 8, and which provide for closing during the abovementioned sixty (60) day cure period.

15. In the event the Debtor exceeds the sale minimum for a specific time period set forth in paragraph 3, the Debtor will be credited the amount against the required minimum for the next time period.

16. All deeds in lieu and consents to foreclosure previously delivered to Capital One shall remain in escrow with Capital One's counsel until such time as a particular Unit sale closes and Capital One receives its required payment, upon which event the deed in lieu and consent to foreclosure for that particular Unit will be released from escrow, as provided in paragraph 10.

17. The execution of this Agreement obviates the need to hold a valuation hearing.

18. During the tenure of this Agreement, the Borrowers agree not to encumber any of the Units or enter into leases for any Unit that is not currently occupied ("Unoccupied Units"). Currently Units 3H, 4E, 10J and PHH ("Occupied Monthly Units") are occupied on a month to month basis and Unit PHG ("Occupied Leased Unit") is occupied pursuant to a lease which expires in

February 2012 (Occupied Monthly Units and Occupied Leased Unit collectively "Rented Units"). Debtor may continue to lease the Occupied Monthly Units on a month to month basis and may lease the Occupied Leased Unit on a month to month basis to the current tenant thereof upon the expiration of the lease for the Occupied Leased Unit, provided the immediate vacancy of any of the Occupied Monthly Units and of the Occupied Leased Unit, upon expiration of the Occupied Leased Unit lease, is not required by Capital One, in its sole discretion, to maximize the probability of Debtor meeting the required sales goals under this Agreement. None of the current tenants in the Rented Units may be relocated to any of the other Rented Units if any of such other Rented Units hereafter become vacant.

19. In the event that the Borrowers are unable to comply with the terms of this Agreement, including, but not limited to their inability to make timely pay downs as set forth in paragraph 2, the Borrowers agree to immediately permit Capital One to record the deeds in lieu or file the consents to foreclosure in its possession. The Borrowers also agree that, upon such failures to comply with the terms of this Agreement, and at the discretion and request of Capital One, Borrowers shall immediately re-execute the deeds in lieu or consents to foreclosure in the name of Capital One or its designee or assignee. In the event of any of the foregoing, and provided the Borrowers do not take any action or file any bankruptcy proceeding to prevent the delivery or recording of the deeds or prevent the commencement,

stay or defense of any foreclosure action, the parties shall exchange mutual general releases of all obligations between Borrwers and Capital One.

20. In the event that the Borrowers timely comply with all the terms and conditions of this Agreement, and the Agreement is not otherwise in default, at the closing of the last Unit sale, the parties shall exchange mutual general releases.

21. Provided no event of default has occurred hereunder, the Borrowers, or their designee, shall have the right to pay the sum of $9,700,000.00 ("Buy-Out Price") in full satisfaction of all sums due and owing to Capital One pursuant to this Agreement and have the Loan assigned to a designee of the Borrowers, provided that Borrowers, no later than September 23, 2011, demonstrate in writing, to Capital One's reasonable satisfaction, Borrowers' or Borrowers' designee's ability to pay such amount to Capital One in certified or bank funds, and then actually pay the Buy-Out Price on or before September 30, 2011, time being of the essence. In no way shall the Borrowers inability to pay the Buy-Out Price on or before September 30, 2011 affect the other terms and conditions of this Agreement. In the event any Units are sold prior to September 30, 2011, the Buy-Out Price shall be reduced by the amount of Net Proceeds receieved by Capital One from such Unit sale or sales.

22. Nothing in this Agreement shall be construed to prevent Capital One from selling or assigning its Loan documents to a third party after the execution of this Agreement. Nor should anything in this Agreement be construed to constitute a waiver of Capital One's rights to collect full amount owed to it under the Loan

documents, including the guaranty of Futterman and Caldwell, should the Borrowers default under this Agreement.

23. There are no agreements or understandings between the parties other than expressly contained herein. This Agreement may not be changed, modified, or discharged, in whole or in part, orally, and no termination, alteration, modification, variation or waiver of this Agreement, or any of its provisions shall be effective unless contained in a writing signed by the parties to this Agreement.

24. This Agreement shall be governed by New York law and is subject to Bankruptcy Court approval. Should this Agreement, or the consequences of this Agreement, result in the dismissal of the Debtor's bankruptcy, the Borrowers and Futterman agree that they will not file a bankruptcy petition prior to the completion of the terms of this Agreement and that, if any of them do so, such a filing will constitute a breach of this Agreement.

CAPITAL ONE,
NATIONAL ASSOCIATION

/S/Linda Burg_____
By: Linda Burg
Title: Senior Vice President

Uptown Partners LLC

/S/Lewis Futterman_____
By: Lewis Futterman
Title: ~~Member~~ Pres.

        Lenox Condominium LLC

        By: Uptown Partners, LLC,
            Its Sole Member

        /S/Lewis Futterman_____
        By: Lewis Futterman
        Title: ~~Member~~ Pres.


        /S/Lewis Futterman_____
        Lewis Futterman, guarantor


        /S/Starla Caldwell_____
        Starla Caldwell, guarantor



**SO ORDERED ON THIS 30th DAY OF JUNE, 2011**

*/s/ Allan L. Gropper*_____
**UNITED STATES BANKRUPTCY JUDGE**